C. Jeffrey Dufur, Respondent-Appellant, v Matthew Lavin, Appellant-Respondent, and Bowling Green Lanes, Inc., Respondent-Appellant, et al., Respondents. (Action No. 1.)

Matthew Lavin, Appellant-Respondent, v Russell Wilson et al., Respondents, Bowling Green Lanes, Inc., Respondent-Appellant. (Action No. 2.)

Third Department, May 10, 1984

### APPEARANCES OF COUNSEL

*Daniel H. Mahoney* for appellant-respondent in Actions Nos. 1 and 2.

*Maynard, O'Connor & Smith* (*Roger J. Cusick* of counsel), for Bowling Green Lanes, Inc., respondent-appellant in Actions Nos. 1 and 2.

*Bloomberg & Santola* (*Daniel R. Santola* of counsel), for C. Jeffrey Dufur, respondent-appellant in Action No. 1.

*Carpenter & Keefe* (*Charles H. Carpenter* of counsel), for Joseph Zelenke, respondent in Actions Nos. 1 and 2.

*Schrade & Kimmey* (*Karl H. Schrade* of counsel), for DBA Products Co., Inc., respondent in Actions Nos. 1 and 2.

*Carter, Conboy, Bardwell, Case & Blackmore* (*Forrest N. Case, Jr.,* of counsel), for Atlas Products, Inc., respondent in Actions Nos. 1 and 2.

### OPINION OF THE COURT

MAHONEY, P. J.

These actions, which were consolidated for trial, arose out of a September, 1974 fire in which plaintiffs C. Jeffrey Dufur and Matthew Lavin, then ages 17 and 19, were injured. At the time of the accident, plaintiffs were working for defendants David Lutz and Russell Wilson, who were in the business of refinishing bowling pins. The fire occurred on premises leased by Lutz and Wilson from defendant Joseph Zelenke. Lutz and Wilson hired Lavin on a piecework basis and, according to Lavin, authorized him to hire some of his friends to help.

Plaintiffs' proof demonstrated that shortly after midnight on the night in question, Lavin, Dufur and another boy Lavin had gotten to help were working alone cleaning bowling pins and were using a pin cleaning machine which

had been loaned to Lutz and Wilson by defendant Bowling Green Lanes, Inc. The electric motor which powered the machine was not the sealed, "explosion proof" type and, therefore, the machine was designed for use with nonflammable detergents. Plaintiffs offered evidence that, on the night of the fire, the pin cleaning machine was being used with Shrinkcote Extender, a highly inflammable solvent designed for use in refinishing bowling pins. Plaintiffs testified that the fire broke out in the pin cleaning machine and quickly spread to the floor and a wall. Plaintiffs attempted to beat the flames out with their jackets. While some testimony indicated that the fire in the machine was extinguished, other testimony indicates that the machine remained burning. Plaintiffs attempted to carry the machine out of the building when the sleeves of Dufur's shirt caught fire. The machine was dropped, spilling burning liquid onto the floor. Plaintiffs ran through the fire to escape and the clothing of both boys caught fire. After they were outside, Lavin beat out the flames on Dufur and himself. Both Dufur and Lavin suffered serious burns.

In separate actions, plaintiffs sued Lutz, Wilson, Zelenke and Bowling Green as well as Atlas Products, Inc., which manufactured Shrinkcote Extender, and DBA Products Company, which manufactured the pin cleaning machine. Dufur included in his action a cause of action against Lavin. Trial Term dismissed the causes of action against Zelenke and Atlas at the close of plaintiffs' cases and submitted the remainder of the actions to the jury. The jury found no liability on the part of DBA, but found in favor of plaintiffs against Lutz, Wilson and Bowling Green. In each action, the jury found no contributory negligence. In Dufur's action, however, Lavin was found to have been negligent. In Dufur's action, $190,000 in damages were apportioned: 30% against Lutz, 30% against Wilson, 35% against Bowling Green and 5% against Lavin. In Lavin's action, $15,000 in damages were apportioned: 30% against Lutz, 30% against Wilson and 40% against Bowling Green. An amended judgment was entered, as were orders disposing of various trial and posttrial motions. Lavin took an appeal and Bowling Green and Dufur took cross appeals.

Lavin argues that Dufur's cause of action against him should have been dismissed by Trial Term or, alterna-

tively, that the finding of negligence on his part in Dufur's action was inconsistent with the finding of no contributory negligence in his action. Lavin also contends that Trial Term improperly dismissed his causes of action against Zelenke and Atlas. Finally, Lavin urges that the award of damages was inadequate. Bowling Green argues that plaintiffs failed to prove a prima facie case against it, that plaintiffs were contributorily negligent such as to bar their causes of action, and that the jury charge was improper. Dufur, though he took a cross appeal, does not challenge the final judgment.

■ Initially, we affirm Trial Term's dismissal of the causes of action against Zelenke. While the lessor was apparently aware that Lutz and Wilson were going to operate a bowling pin refinishing business, he did not know what materials would be used or that inflammable liquids would be located in the building. Moreover, the lease was not to commence until October 1, 1974, four days after the fire and, while Zelenke did give Lutz and Wilson permission to store some bowling pins in the building prior to the lease, he did not give permission to store equipment or chemicals or to commence work. Since Zelenke did not retain control over the premises, he had no duty to prevent negligence (*Clarke v Unanue,* 97 AD2d 888; *Fessler v Brunza,* 89 AD2d 640). Also, the evidence does not indicate that the building contained a structural defect upon which liability could be predicated (see *Strade v Ryan,* 97 AD2d 880). Finally, while plaintiffs did introduce evidence that the building failed to contain ventilation and fire fighting equipment, which failure they contended was a proximate cause of their injuries, they failed to introduce any statutes, ordinances or regulations which imposed a duty on Zelenke's part to provide such equipment. Nor is there a common-law duty on the part of a landlord to equip the premises with fire prevention or fighting devices absent an agreement to the contrary or other special circumstances (see 49 Am Jur 2d, Landlord and Tenant, § 891, p 868).

■ As to Atlas, plaintiffs' actions proceeded on the theories of breach of warranty and strict products liability predicated on the role of Shrinkcote Extender as a cause of the fire. At trial, it became evident that Lutz had been

employed by Atlas as a sales representative and that large quantities of Atlas products, including Shrinkcote Extender, were within the premises on the night of the fire. Theorizing that the quantity of products exceeded that necessary for the bowling pin refinishing business, Lavin opposed Atlas' motion to dismiss on the theory of *respondeat superior*. We reject Lavin's argument on this principle because it was never pleaded by plaintiff, nor was a motion made to amend the pleadings to conform to the proof (see *Le Sawyer v Squillace,* 14 AD2d 961, 962, mot for lv to app den 11 NY2d 648). Additionally, the record offers no support for claims against Atlas based on breach of warranty and strict products liability. In our view, Trial Term properly dismissed the causes of action against Atlas.

■ Bowling Green argues that plaintiffs failed, as a matter of law, to prove a prima facie case against it and that, therefore, Trial Term should have dismissed the causes of action against it. Bowling Green claims that it owed no duty of care to plaintiffs. Where one loans property to another, a duty of care arises (*La Rocca v Farrington,* 276 App Div 126, affd 301 NY 247; *Knapp v Gould Auto. Co.,* 252 App Div 430, 433; 9 NY Jur 2d, Bailments and Chattel Leases, § 76, pp 88-89). While the conduct necessary to satisfy such duty depends on the facts and circumstances of the case, including the type and purpose of the bailment, it cannot be said that one who loans property has no duty to act reasonably. In this case, while Bowling Green contends that the bailment of the pin cleaning machine was gratuitous, there is evidence to support a finding of a mutual benefit bailment (see 9 NY Jur 2d, Bailments and Chattel Leases, § 6, pp 16-17). Bowling Green no longer cleaned its own bowling pins and it appears that it was about to become the primary, if not only, customer of Lutz and Wilson, whose business required a pin cleaning machine. Thus, the bailment had some commercial benefit to Bowling Green.

Additionally, there is some evidence from which the jury could have found Bowling Green negligent. There is evidence that, while the pin cleaning machine was designed to operate only with the cover closed, it was operable with the cover open at the time it was lent to Lutz and Wilson.

There was expert testimony that a fire in the machine could not have occurred had the cover been closed. It is also clear that Bowling Green's representative gave no instructions or warnings to Lutz and Wilson regarding what products should or should not be used with the machine. Finally, there is evidence that Bowling Green was aware of the danger of fire involved in the bowling pin refinishing operation and that inflammable liquids might have been used in pin cleaning machines. Indeed, the testimony indicates that Bowling Green stopped refinishing its bowling pins because its insurance carrier prohibited such activity in its building due to the danger of fire. Since there was evidence from which the jury could have found negligence on the part of Bowling Green which proximately caused plaintiffs' injuries, a prima facie case was established.

■ Bowling Green also raises several challenges to the jury charge. Initially, we hold that the trial court properly charged the emergency doctrine and the rescue doctrine. Contrary to Bowling Green's argument, there is sufficient evidence to support a finding that plaintiffs were not negligent in causing the fire or in attempting to remove the machine, which may have still been burning, from the building. Thus, they were entitled to such a charge. Bowling Green also urges that charging strict products liability with regard to it as well as DBA was prejudicial. A review of the verdict sheet indicates that, while strict products liability was charged regarding both DBA and Bowling Green, the jury expressly rejected that theory of liability as to both defendants. Thus, the charge was not prejudicial.

■ A more troublesome issue is the contributory negligence of plaintiffs. Since the fire occurred prior to September 1, 1975, the principle of contributory negligence instead of comparative negligence is applicable to this case (CPLR 1413). Thus, in each of these actions, if the plaintiff was found to have been contributorily negligent, recovery would be precluded. "Contributory negligence is conduct on the part of the plaintiff, contributing as a legal cause to the harm he has suffered, which falls below the standard to which he is required to conform for his own protection" (Prosser, Torts [4th ed], § 65, pp 416-417; see Restatement, Torts 2d, § 463). Based on the facts adduced at trial, Bowl-

ing Green urges two theories of negligence on the part of plaintiffs: first, misuse of the pin cleaning machine, and second, the attempt to carry the machine out of the building. In our view, no reasonable reading of the record could support either theory.

Bowling Green urges that the evidence indicates that it was Lavin and/or Dufer who put the Shrinkcote Extender in the pin cleaning machine. It is apparent that a question of fact existed as to this issue. Even if plaintiffs did so, however, there is no evidence to demonstrate that such act constituted negligence. It is clear from the testimony that Lavin was never instructed not to put Shrinkcote Extender into the pin cleaning machine. There is no evidence that Lavin was aware that the pin cleaning machine did not have an explosion proof motor or that the use of inflammable fluids in the machine created a risk of fire. It also appears from the record that Lavin had no reason to know of any danger. He was not familiar with the bowling pin refinishing business and the pin cleaning machine had no warning or instruction labels affixed to it. Thus, even if it was plaintiffs who put the inflammable fluid into the machine, such act was not negligent. We note in this regard that the jury's finding on the verdict sheet that the machine was being misused is not inconsistent with its finding of no contributory negligence. The record supports a conclusion that the misuse of the machine was the fault of Lutz, Wilson and Bowling Green, and not plaintiffs.

Bowling Green also argues that, having extinguished the fire in the pin cleaning machine, it was negligent for plaintiffs to attempt to carry the machine out of the building. We disagree. The evidence is conflicting as to whether the fire in the machine was completely out. If the fire in the machine was still burning, the decision to carry it out of the building can hardly be said to have been negligent. Where a person, through no fault of his own, is faced with sudden and unexpected circumstances and is compelled to act suddenly, the law does not demand that accuracy of judgment which would be called for under other circumstances. In such cases, even if he makes a mistake, he will not be deemed to have been contributorily negligent (see *Amaro v City of New York,* 40 NY2d 30, 36; 41 NY Jur,

Negligence, § 62, p 78). Here, plaintiffs had extinguished the fire on the floor and wall. They were aware that the building was a 100-year-old wood structure and that it contained inflammable products. Their decision to carry the machine, if still burning, was not negligent. If the machine was not burning, it was clearly not negligent to carry it out of the building to prevent the fire from starting anew. Thus, Dufur's cause of action against Lavin should have been dismissed, and the jury's finding of no contributory negligence against either plaintiff must be upheld.

■ This result causes no problem with the verdict in Lavin's action. In Dufur's action, however, dismissal of the claim against Lavin results in a liability apportionment total of 95% instead of 100%. A comparison of the two verdicts reveals that in each, liability of Lutz and Wilson was apportioned at 30% each. In Lavin's verdict, the remaining 40% was assessed against Bowling Green while, in Dufur's verdict, 35% was assessed against Bowling Green and 5% against Lavin. Since there is no inconsistency in Lavin's verdict and since the only difference between the verdicts was the 5% assessed against Lavin in Dufur's verdict, we direct that Dufur's verdict be modified to apportion liability in the same manner as the verdict in Lavin's action: 30% each against Lutz and Wilson and 40% against Bowling Green. While we acknowledge that the apportionment of liability among defendants is generally a matter for the jury (see *Opera v Hyva, Inc.,* 86 AD2d 373, 379), in this case, the jury did properly apportion liability in the Lavin action. Since both actions were based on the same occurrence and the record reveals no reason for different apportionments in the actions, there is no need for a new trial on liability. We note in this regard that it has been almost 10 years since the accident occurred.

■ As a final issue, Lavin claims that the jury's verdict of $15,000 was inadequate. A jury verdict on damages may not be set aside as inadequate unless it is so disproportionate to the injuries proved as to be unconscionable and beyond reasonable bounds (*Fitzgerald v Dinwiddie,* 99 AD2d 622; *Hallenbeck v Caiazzo,* 41 AD2d 784). Consideration must be given to the nature and extent of the injury, permanence of injury and the extent of pain, past, present

and future (see *Turner v Miller,* 61 AD2d 856, 857). In the instant case, Lavin proved hospital and doctors expenses of almost $4,600. Additionally, the proof indicated that the burns on his leg amounted to 2% to 5% of his body area and required skin grafting to heal properly. He spent some six weeks in the hospital and suffers permanent scarring and increased susceptibility to further injury. Finally, he suffered a great deal of pain at the time of the injury and during the healing period. Based on these factors, an award of $15,000 was unconscionably inadequate. Therefore, a new trial on the issue of Lavin's damages is necessary.

The order entered April 12, 1983, which denied defendant Bowling Green Lanes, Inc.'s motion for judgment notwithstanding the verdict, should be affirmed, without costs.

The order entered April 12, 1983, which denied a motion by plaintiff Matthew Lavin, should be modified, on the law and the facts, without costs, by reversing so much thereof as denied that portion of the motion which sought to vacate the denial of Matthew Lavin's motion to dismiss the cause of action against him; the motion should be granted to that extent; and, as so modified, affirmed.

The amended judgment entered March 23, 1983 should be modified, on the law and the facts, without costs, by (1) vacating so much thereof as found defendant Matthew Lavin liable for 5% of the amount awarded in action No. 1, (2) increasing defendant Bowling Green Lanes, Inc.'s liability from 35% to 40% of the amount awarded in action No. 1, (3) severing the damages portion of action No. 2, (4) reversing the award of damages in action No. 2, and (5) remitting the matter for a new trial on the issue of damages only in action No. 2, and, as so modified, affirmed.

KANE, CASEY, WEISS and LEVINE, JJ., concur.

Order entered April 12, 1983, which denied defendant Bowling Green Lanes, Inc.'s motion for judgment notwithstanding the verdict, affirmed, without costs.

Order entered April 12, 1983, which denied a motion by plaintiff Matthew Lavin, modified, on the law and the facts, without costs, by reversing so much thereof as denied

that portion of the motion which sought to vacate the denial of Matthew Lavin's motion to dismiss the cause of action against him; motion granted to that extent; and, as so modified, affirmed.

Amended judgment entered March 23, 1983 modified, on the law and the facts, without costs, by (1) vacating so much thereof as found defendant Matthew Lavin liable for 5% of the amount awarded in action No. 1, (2) increasing defendant Bowling Green Lanes, Inc.'s liability from 35% to 40% of the amount awarded in action No. 1, (3) severing the damages portion of action No. 2, (4) reversing the award of damages in action No. 2, and (5) remitting the matter for a new trial on the issue of damages only in action No. 2, and, as so modified, affirmed.